# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

MELISSA ANN MARVEL,    )
                                )
      Plaintiff,        )
                                )
vs.                      )     CAUSE NO. 3:08-CV-133
                                )
THOMAS M. COOLEY,     )
*et al.*,               )
                                )
      Defendants.      )

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Defendants' Motion for Summary Judgment and Dismissal, filed on May 15, 2008, by Defendants Thomas M. Cooley, Dean Amy Timmer, and Dean Paul Zelenski (DE #12).  For the reasons set forth below, the Motion is **GRANTED**.  The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against remaining Defendants Thomas M. Cooley, Dean Amy Timmer, and Dean Paul Zelenski.  The Clerk is **FURTHER ORDERED** to close this case.

<u>PROCEDURAL BACKGROUND</u>

*Pro se* plaintiff, Melissa Ann Marvel ("Marvel"), filed this civil action collectively against Defendants, Thomas M. Cooley, Dean Amy Timmer, and Dean Paul Zelenski, collectively ("Cooley

Defendants") and against Elkhart County Prosecutors Office, Attorney Curtis Hill, and Attorney Michael Cosentino, collectively ("State Defendants"), on March 18, 2008. Among other general allegations, Marvel claims that the collective Defendants are responsible for the deprivation of her life, liberty and property because of prosecutorial vindictiveness or retaliation. In May of 2008, the Cooley Defendants filed the instant Motion for Summary Judgment (DE #12) and the State Defendants filed a Motion to Dismiss (DE #17).[1] While these motions were pending before this Court, Marvel filed her own Motion to Dismiss on July 23, 2008 (DE #27). The State Defendants notified the Court that they did not object to Marvel's Motion to Dismiss; however, the Cooley Defendants opposed Marvel's Motion for various reasons, including their assertion that dismissal without prejudice would be inequitable or prejudicial to them. The Cooley Defendants provided a thorough brief pertaining to their opposition to Marvel's voluntary dismissal. On August 28, 2008, this Court issued an order taking Marvel's Motion to Dismiss under advisement (DE #35). Marvel was ordered to file her reply on or before September 15, 2008. Marvel did not do so.

On November 18, 2008, an Emergency Injunction was filed by Marvel. Her Emergency Injunction demanded, among other things,

---

[1] The State Defendants' Motion to Dismiss was granted on December 8, 2008 (DE #51).

that the Court order Defendants to "arrange to put MAM back into law school without taking LSAT . . . to finish degree at Defendant's expense including housing with cats and living expenses." (DE #37.) On that same day, Marvel filed the aforementioned Motion to Revoke or Rescend (sic) Plaintiff's Motion to Dismiss (DE #36).[2] In an Order filed on November 20, 2008 (DE #38), this Court denied Marvel's Emergency Injunction because she failed to satisfy the Court that she met her threshold burden of showing that the extraordinary remedy of an Emergency Injunction was warranted in this matter. Since that time, Marvel has filed several appeals, a motion to proceed on appeal *in forma pauperis*, and another motion lacking merit that she described as one for "joinder" and emergency injunction. Marvel's motions have been denied, and she has voluntarily dismissed her own appeals.

FACTUAL BACKGROUND

In December of 1986 Marvel was assaulted with "pre-meditated attempted murder and attempted rape". (Comp. ¶ 4.) It is not clear from the face of the complaint where the assault occurred. The alleged offenders were never charged nor are they named as defendants in this action. (Comp. ¶ 4.) In August of 1987, Marvel attempted suicide, the circumstances of which allegedly put the police on notice of the criminal assault described above. (Comp.

---

[2] Marvel's Motion to Dismiss was later granted (DE #51).

¶ 5.) It is not clear from the face of the complaint which police department was supposed to be put on notice. Several years later, Marvel attended ISU[3] with a family member of one of her alleged assailants and may have been roommates with such person. (Comp. ¶ 6.) Marvel states, "MAM[4], attended ISU with family member of 1986 Dec. assailants against MAM as a roommate via roommate and classes MAM was in a hostile environment as a result MAM's classes suffered." (*Id.*) It is not clear from the face of the complaint how this incident, or any possible damages described therein, relates to any of the Defendants in the current matter.[5]

In 1992, Marvel sought counseling from a mental health care provider named Sally McMann.[6] (Comp. ¶ 9.) With her consent, those counseling sessions were tape-recorded. (*Id.*) In 1994, Marvel was in a car accident, and an individual named Thomas Leatherman[7] ("Leatherman") handled her case as her criminal defense attorney. (Comp. ¶ 10.) Marvel claims that the circumstances

_____

[3] The Court assumes that ISU refers to Indiana State University, although Marvel does not clearly define which university she attended.

[4] Throughout her filings, Marvel refers to herself as MAM.

[5] Marvel goes on to state, "[I]n Spring 1989, MAM, at ISU car windshield and headlight was smashed and vandalized and ISU refused insurance claim for property damage on school parking lot resulting in a warning ticket on State Road 31 from Indianapolis to Nappanee." (Comp. ¶ 8.) Again, the complaint does not state, nor is it reasonable to infer, that this incident relates to the Defendants listed in this matter in any way.

[6] Sally McMann is not listed as a defendant in this action.

[7] Thomas Leatherman is not listed as a defendant in this action.

-4-

surrounding this matter were an attempt to take her personal property and to put her life in danger. (*Id.*) Marvel states:

> [O]n State Road 33 in Dunlap Eby Ford a Large truck rear-ended MAM's Mercury Topaz causing sever[8] property damage to car and personal injury to MAM, but was told exrays' showed only swelling, Thomas Leatherman a criminal defense attorney handled the car case without litigation; This is second attempt to take personal property and put MAM's life in danger.

(Comp. ¶ 10.) Again, Marvel does not explain how the damages described in this incident are tied to any of the Defendants in this case.

In 1995, Marvel enrolled at Thomas M. Cooley for law school, and she participated in an externship program with Leatherman in January of 1998. (Comp. ¶¶ 11, 14.) During her externship, Marvel worked with Leatherman on a case in Indiana involving parties named Ricky Joyner and Sandra Hernandez.[9] (Comp. ¶ 14.) The Elkhart County Prosecutor's Office was involved in the prosecution of the case, and, according to Marvel, they used prosecutorial vindictiveness in a retaliatory way to inflict intentional

---

[8] When quoting Marvel directly throughout this order, the Court will display Marvel's language as originally submitted to avoid repetitious use of the word sic.

[9] According to the complaint, Sandra Hernandez was murdered. Marvel states, "[the] case was used against MAM arising prosecutorial vindictiveness in a retaliatory way against MAM to inflict emotional distress **via harassment with Sandra Hernandez being the sister of Mike Hernandez one of the 1986 assailants against MAM making her think her suicide attempt caused Sandra to be murdered and Judge Duffin comment regarding MAM's private conduct in the privacy of MAM's bedroom in Lansing Michigan which inflicted emotional distress.**") (Bold in original.)

emotional distress upon her.  (Comp. ¶ 14.)  Marvel herself was not prosecuted, nor were charges brought against her.  However, the circumstances of the case apparently caused Marvel to think her 1986 suicide attempt was the reason for Sandra Hernandez's murder. (*Id.*)

In September of 1998, Marvel was committed to a mental hospital "via Elkhart County Prosecutorial vindictiveness or retaliatory action through Cooley's Dean Zelenski . . . as result MAM's car was reposed the fifth taking of personal property and put MAM's life in danger."  (Comp. ¶ 15.)  For the next several years, Marvel attempted to obtain her mental health records from her previous counseling sessions with Sally McMann, but she never received them.  (Comp. ¶16.)  From 1998 to the present, Marvel was "involuntarily, voluntarily, and coerced voluntarily, to confinement both mental and criminal out of Elkhart County and Cooley's prosecutorial vindictiveness or retaliation for the Dec. 1986 and Aug. 1987 assaults against MAM."  (Comp. ¶ 17.)

From 1999-2003, the Cooley Defendants deprived Marvel of the Purple Heart tuition exemption[10] to Indianapolis Law School "via Elkhart county and Cooley's prosecutorial vindictiveness and retaliatory action for Dec. 1986 and Aug. 1987 assault against MAM."  (Comp. ¶ 18.)  Soon thereafter, Marvel defaulted on her

---

[10] Marvel does not explain what this tuition exemption is or how one receives such an exemption.

student loans, "resulting in a deprivation of further use of Purple Heart tuition at state school to change professions as result the seventh property or entitlement taking." (Comp. ¶ 19.)

From 2004 through 2007, Marvel's bicycle, Native American Necklace, Native American DNA, and her car were "stolen and taken." (Comp. ¶ 20). It is not clear from the complaint who stole these items, and Marvel does not allege that the losses were directly attributable to any of the Defendants listed in this action.

In February of 2008, Marvel's property or entitlement to welfare was taken because "assistant group member (MAM) left home after Elkhart County prosecutors and Cooley retaliated and sent Nappanee Police down for neighbors alleged yelling in home and intimidated MAM by stating MAM must take medicine and cannot raise voice." (Comp. ¶ 21.)

As a result of the circumstances described above, Marvel requests monetary damages against all of the Defendants to compensate her for her losses as well as all other relief just and proper. She has not sought specific injunctive relief in her complaint. In Count One, the only count of her complaint, Marvel lists the cause of action as "Negligence Per Se of United State Constitution Amendment 14th Due Process Clause prohibiting prosecutorial vindictiveness or retaliation." Therefore, this Court will address Marvel's claims as if arising under federal law.

<u>DISCUSSION</u>

The Cooley Defendants title their motion as one of summary judgment and dismissal. However, they describe the standard of review and bring legal arguments based solely on Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). Additionally, they have failed provide Marvel, a *pro se* Plaintiff, with the applicable *Timms* notice. Local Rule 56.1(e) provides that "[i]f a party is proceeding *pro se* and an opposing party files a motion for summary judgment, counsel for the moving party must serve a notice upon the unrepresented party as set forth in Appendix C." N.D. Ind. L.R. 56.1(e); *see also Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992). Defendants have provided no such notice. However, rather than issuing a *Timms* notice itself at this point, the Court will treat the Cooley Defendants' motion as a motion to dismiss as there is no need to go outside of the pleadings to dispose of this action.[11] The end result of this characterization is the same, namely dismissal.

<u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

The Cooley Defendants' claim this Court lacks personal jurisdiction over them and that dismissal is required under Federal

---

[11] However, the Court notes that, in deciding a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from both parties. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987).

Rule of Civil Procedure 12(b)(2). While a complaint does not need to include facts alleging personal jurisdiction, the plaintiff has the burden of demonstrating the existence of jurisdiction if challenged. *Purdue Research Foundation v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In deciding a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from both parties. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir. 1987). "[W]hen the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d at 782 (quotation marks and citations omitted). The plaintiff is entitled to have any conflicts in the affidavits resolved in her favor. *Id.* However, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. The court takes as true the facts contained in the defendant's affidavits that remain unrefuted by the plaintiff. *Jamik, Inc. v. Days Inn of Mount Laurel,* 74 F.Supp.2d 818, 821 (N.D.Ill. 1999).

The Cooley Defendants argue that this Court lacks personal jurisdiction over them because they do not have sufficient minimum

contacts with the State of Indiana.  Although Marvel has checked

the box on the civil cover sheet of her complaint indicating

"diversity," she does not clearly define the jurisdictional basis

of her claims.  On the face of her complaint, Marvel lists herself

as a resident of Indiana, the Cooley Defendants as residents of

Michigan, and the State Defendants as residents of Indiana.  Thus,

according to Marvel's complaint, complete diversity did not exist

when she filed her claim as required by 28 U.S.C. § 1332.  *See*

*Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 381 (7th Cir.

1990).  However, pursuant to the language used in her complaint and

based on the allegations that the Defendants violated her rights

under the Fourteenth Amendment by depriving her of life, liberty,

and property without due process of law, this Court has thus

construed Marvel's claims as if she is attempting to proceed under

federal law.[12]  As such, the personal jurisdiction analysis here has

both a constitutional and statutory element.  In order for personal

jurisdiction to exist, haling the Defendants into this Court: (1)

must be in accord with due process principles, and (2) the

Defendants must be amenable to service of process from the Court.

---

[12] Even if the Court were to proceed under a diversity jurisdiction
theory, the instant "minimum contacts" analysis regarding the lack of personal
jurisdiction as to the Cooley Defendants would still apply requiring the Court
to dismiss the claims against them.  (A federal court has jurisdiction over a
diversity case only if a court of the state in which the federal court is
sitting would have jurisdiction.  *See Lakeside Bridge & Steel Co. v. Mountain
State Const. Co., Inc.*, 597 F.2d 596 (7th Cir. 1979)).  Furthermore, as
described in more detail below, Marvel does not bring any actionable claims in
her complaint; therefore, the claims would be dismissed pursuant to Federal
Rule of Civil Procedure 12(b)(6) even if personal jurisdiction did exist.

*See U.S. v. De Ortiz*, 910 F.2d 376, 381-82 (7th Cir. 1990). "[S]ervice and personal jurisdiction are intertwined with the power of the court, which hinges on due process." *Harley v. Harley G. Lappin*, 2008 WL 4889965, *3 (S.D.Ill. Nov. 12, 2008) *(citing ISI International, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548, 550-51 (7th Cir. 2001). Due process requirements are met when a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted).[13]

Amenability of service, on the other hand, is derived from Federal Rule of Civil Procedure 4(k):

> (1) In General.  Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
>> (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;

---

[13] Some cases have held that the due process clause of the Fifth Amendment applies in federal question cases involving non-residents of the United States or in those cases where a statute authorizes nationwide service of process; these cases allow minimum contacts with the United States as a whole instead of the specific forum state.  However, the Fourteenth Amendment's due process clause applies where, as here, the defendant is a non-resident of the forum state (but a U.S. citizen or entity) and there is not an applicable statute authorizing nationwide service of process.  *See L.H. Carbide Corp. v. Piece Maker Co.*, 852 F.Supp. 1425 (N.D.Ind. 1994); *discussing Omni Capital International v. Rudolf Wolff & Co., LTD*, 484 U.S. 97 (1987). *See also Harley v. Harley G. Lappin*, 2008 WL 4889965, *3-4 (S.D.Ill. Nov. 12, 2008) (applying Fourteenth Amendment jurisprudence, the standard traditionally applied in diversity cases, for plaintiff's constitutional claim arising out of Eighth Amendment issues).

> (B) who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>
> (C) when authorized by a federal statute.
>
> (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> > (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> >
> > (B) exercising jurisdiction is consistent with the United States Constitution and laws.

FED.R.CIV.P. 4(k). The question is whether the defendant is amenable to service of process from the federal court. When a federal statute, such as 28 U.S.C. Section 1983, does not provide for nationwide service of process, jurisdiction in federal question cases is limited by the forum state's long-arm statute. *See Omni Capital International v. Rudolf Wolff & Co., LTD*, 484 U.S. 97, 105 (1987).

Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961 (Ind. 2006). "The 2003 amendment to Indiana Trial Rule 4.4(A) was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *Id*. at 967.

Therefore, jurisdiction of the state court has been extended to any basis not inconsistent with the Constitutions of [Indiana] or the United States. *Id*. at 967. In essence, the personal jurisdiction analysis collapses into a federal due process inquiry focusing on the familiar notions of fair play and substantial justice.

As stated above, the due process requirements of the Fourteenth Amendment are met when a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotation marks omitted). Such minimum contacts are categorized and can be used to establish two types of jurisdiction – either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8-9 (1984). If those contacts are continuous and systematic general business contacts, the court may exercise "general jurisdiction" even when the matter at issue is not related to those contacts. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. at 414-15. If the contacts are not continuous and systematic, specific jurisdiction may still be established through particularized contact with the forum state. This occurs when a defendant purposefully avails itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there. *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985). A defendant may not be subject to a court's jurisdiction solely as a result of random, fortuitous or attenuated contacts, and the generalized foreseeability of the defendant's action causing harm in the forum is not sufficient for the exercise of jurisdiction. *Id.* at 474-75. Instead, whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there is the crucial inquiry. *Id.* at 474. A single act may be sufficient to establish specific jurisdiction, but the defendant's act must have a "substantial connection" with the forum state, and the suit is based on the defendant's act. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). Specific jurisdiction is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *Purdue Research Foundation v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other activity." *Id.* Finally, if either general or specific jurisdiction is established, then due process requires that the assertion of personal jurisdiction over the defendant is reasonable. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind. 2006). Here, the Court need not delve into the factors used to determine the reasonableness of jurisdiction because neither

general or specific personal jurisdiction can be established.

The Cooley Defendants have provided affidavits from several parties regarding jurisdiction. In one such affidavit, James Robb, the Associate Dean of Development and General Counsel for Thomas M. Cooley Law School, states:

> I am familiar with and knowledgeable about the legal status of Thomas M. Cooley Law School and can attest to its operation as a private professional school within the State of Michigan and being in the business of providing legal educational services to students at its campus locations within the State of Michigan. . . . While students from Indiana may matriculate at Cooley, the business of operations of the school are within the State of Michigan. It does not have any continuous and systematic business contacts within the State of Indiana. Other than the electronic, telephonic or written contacts the school may have with prospective or active students who are residents of Indiana, the school does not purposefully avail itself of the privilege of conducting any business providing legal education in the State of Indiana.

(DE #13-2, p. 40; Robb Aff. ¶¶ 3-4.) In another affidavit, Timmer, the Associate Dean of Students and Professionalism for Cooley, states:

> At all times relevant, I have been a resident of the State of Michigan and my responsibilities as Associate Dean have involved my contacts with the campus locations of the school to execute and carry out management and other student responsibilities within the State of Michigan. Other than limited and infrequent electronic, written and/or telephonic communication possibly sent or exchanged with some of the prospective or active students whose residence is within the

-15-

State of Indiana, I have not had any regular or customary business contacts within the State of Indiana. . . . My personal contacts within the State of Indiana have been limited to the possibility of infrequent travel into or through the State of Indiana, as well as the possibility of having communicated over the years on just a few occasions with residents of the State of Indiana.

(DE #13-2, p. 42; Timmer Aff. ¶¶ 6-7.)  Marvel does not provide any affidavits of her own, but she simply realleges facts provided in her complaint by saying, "Examples of minimal contacts include but not limited too: Externship contract with Leatherman on Joyner Case, and prosecutors and Cooley, as agents of state, and Cooley's electronic, telephonic, and written contacts with MAM." (DE #22 p. 4.)

Even construing Marvel's assertions generously, she has not presented a *prima facie* case of personal jurisdiction.  In regard to general jurisdiction, it is undisputed that Thomas M. Cooley is a private professional school in Michigan.  There is no indication that the Defendants have campus sites or satellite schools in Indiana, that they own property in Indiana, that they conduct any type of business in Indiana, or that they provide legal education in Indiana.  There is also no indication that the individual Defendants, Timmer or Zelenski, had any connections or business contacts with the State of Indiana.  There is absolutely no evidence from which an inference can be drawn that the Cooley Defendants have continuous and systematic general business contacts

within Indiana.  Thus, general personal jurisdiction has not been established.

Marvel's claims fall short as to specific jurisdiction as well.  There is no evidence that the Cooley Defendants purposefully availed themselves in Indiana to the extent required to establish jurisdiction.  The Cooley Defendants admit that there may have been limited telephonic and electronic communication with current or prospective students in Indiana.  However, even taking Marvel's assertion that the Cooley Defendants had "electronic, telephonic, and written contacts with MAM" as true, those limited contacts establish nothing more than random, fortuitous or attenuated activity which is not an adequate basis for specific jurisdiction. *See Purdue Research Foundation v. Sanofi-Synthelabo*, *S.A.*, 338 F.3d 773, 780 (7th Cir. 2003).  Marvel does not suggest, nor is it reasonable to infer, that those limited instances of communication had anything to do with her alleged constitutional deprivations.  Furthermore, even assuming Marvel's claim that an externship contract existed between the Cooley Defendants and Leatherman (an independent defense attorney who is not named as a defendant in this action) is true, she has not established that such connection supports an inference that the Cooley Defendants purposefully availed themselves of the privilege of conducting business in Indiana that would be sufficient to lead them to anticipate being haled into an Indiana district court.  Contracting with an out-of-

state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). "Instead, we are directed to adopt a 'highly realistic' approach and to place the contract in the context of the entire transaction of which it is a part." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d at 781 (internal quotation marks omitted). Here, Marvel alleges that some kind of contract existed between the Cooley Defendants and Leatherman which allowed her to participate in an externship program. At most, it can be surmised from Marvel's complaint that she worked with Leatherman on a case in Indiana. There is no indication that the Cooley Defendants participated in any of the activities related to that case or that their activities caused a constitutional deprivation or harm. Her broad allegations of vindictiveness and retaliation do nothing to bolster her claims of proper minimum contacts. Thus, it would be fundamentally unfair to require the Cooley Defendants to submit to this Court's jurisdiction for purposes of this litigation. As such, Marvel has not presented a *prima facie* case that personal jurisdiction exists as to the Cooley Defendants, and, therefore, her claims must fail. Furthermore, even if Marvel were able to establish personal jurisdiction, which she has not, her claims would fail for the reasons set forth below as well.

<u>Motion to Dismiss for Failure to State a Claim</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation,* 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.,* 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) (quotation

marks, ellipsis, citations and footnote omitted).

> While, for most types of cases, the Federal
> Rules eliminated the cumbersome requirement
> that a claimant set out in detail the facts
> upon which he bases his claim, RULE 8(a)(2)
> still requires a "showing," rather than a
> blanket assertion, of entitlement to relief.
> Without some factual allegation in the
> complaint, it is hard to see how a claimant
> could satisfy the requirement of providing not
> only "fair notice" of the nature of the claim,
> but also "grounds" on which the claim rests.

*Id.* at n. 3 (citation omitted). Nevertheless, a document filed *pro*

*se* is to be liberally construed, and a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers. However, "on a motion to

dismiss, courts are not bound to accept as true a legal conclusion

couched as a factual allegation." *Id.* at 1965 (2007) (citing

*Papasan v. Allain,* 478 U.S. 265, 286 (1986) (quotation marks

omitted)).

In Count One, the only count of her complaint, Marvel

describes the cause of action as "Negligence Per Se of United

States Constitution Amendment 14ᵗʰ Due Process Clause prohibiting

prosecutorial vindictiveness or retaliation." The complaint does

not identify any specific Section 1983 claims. However, to the

extent that Marvel is attempting to bring suit against the

Defendants under the Constitution's Fourteenth Amendment, the Court

has construed her complaint as one asserting a claim against them

under Title 42 U.S.C. Section 1983.

Title 42 U.S.C. Section 1983 creates a federal cause of action for the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. §1983; *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). In any Section 1983 analysis, a specific constitutional right which was allegedly violated must be identified. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *Kernats v. O'Sullivan,* 35 F.3d 1171, 1175 (7th Cir. 1994).

In order to have a valid claim under Section 1983, the plaintiff must also show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 628 (7th Cir. 1999). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. [S]tate employment is generally sufficient to render the defendant a state actor." *West v. Atkins*, 487 U.S. at 49-50 (internal quotations and citations omitted).

In her complaint, Marvel alleges that the Defendants collectively breached the duty owed to her under the Fourteenth Amendment, by depriving her of her property without due process of law via prosecutorial vindictiveness or retaliation. (Comp. ¶¶ 26-29.) However, she does not allege, nor is it reasonable to infer, that she was prosecuted by the State Defendants or that the Cooley Defendants participated in any such prosecution. She also does not provide information that would lead to a reasonable inference that the Cooley Defendants are connected or linked to acts associated with the violation of her constitutional rights. That said, she broadly alleges that as a result of the "negligent breach" of the above stated duties, she suffered "emotional distress, mental anguish, lost wages and medical expenses." (*Id.*) As noted above, the State Defendants have been dismissed from this lawsuit on principles of immunity and failure to state a claim upon which relief can be granted.

Loss of Property Rights, Personal Property, and Liberty

Marvel is attempting to sue the Cooley Defendants under the Fourteenth Amendment for the loss of certain property rights ("Welfare entitlement Purple heart tuition exemption, cars bicycle, Native American Necklace, and Native American DNA"). She claims that the Defendants have failed to uphold a duty of care owed to her that no person shall be deprived of property rights without due

process of law. She is correct that the Fourteenth Amendment's due process clause provides that the states shall not "deprive any person of life, liberty, or property without due process of law." However, as an initial, overarching matter, the Court notes that Marvel has not adequately identified a specific constitutional violation in her complaint. Although she complains of a Due Process violation, "[s]uch a general allegation does not provide sufficient detail to illuminate the nature of the claim to allow the defendant to respond." *Lawrence v. Milwaukee County Public Defenders Office,* 2008 WL 2004229, *3 (E.D.Wis. May 8, 2008) (*citing George v. Smith,* 507 F.3d 605, 608 (7th Cir. 2007).

In her complaint, Marvel states that the Purple Heart tuition exemption was taken from her, but she does not explain what the Purple Heart tuition exemption is or cite to any applicable statutes or codes, nor does she describe how it is attributed to a student, nor, more importantly, does she allege that the Cooley Defendants are linked to the award or deprivation of such an exemption.[14]

---

[14] The Court notes that if it is characterized as a scholarship, then whether Marvel has a protectable property interest in her scholarship opportunity under the Fourteenth Amendment is a question of state law; scholarship opportunities have not been classified as such protectable interests under Indiana law. *See D.N. ex rel. Huff v. Penn Harris Madison School Corp.*, 2006 WL 2710596, *3, n.2 (N.D. Ind. Sept. 18, 2006) (*citing Indiana High School Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 241, n.26 (Ind. 1997)); *see also Schaill by Kross v. Tippecanoe County School Corp.,* 679 F.Supp. 833, 855 (N.D.Ind. 1988) ("A student's aspirations for a college scholarship . . . do not establish any legally protected interests.") In the alternative, if the tuition exemption is classified as a property interest created by state law, there is no deprivation if the state provides an adequate post-deprivation remedy. *See Marvel v. Indiana Dept. of Veterans*

Also, Marvel does not describe what welfare entitlement was taken from her in February of 2008 or how the Cooley Defendants were responsible in any way for the deprivation of such alleged entitlement. She does not suggest, nor is it reasonable to infer, that the Cooley Defendants are involved in the allocation or denial of any such "group member" welfare benefits. In full, Marvel states:

> MAM's property or entitlement to welfare was taken because assistant group member (MAM) left home after Elkhart County prosecutors and Cooley retaliated and sent Napanee Police down for neighbors alleged yelling in home and intimidated MAM by stating MAM must take medicine and cannot raise voice.

Marvel's allegations do not suggest any plausible scenario in which the Cooley Defendants participated in the alleged deprivation of a welfare entitlement at the hands of the Nappanee Police. Furthermore, no inference can be drawn from her complaint that the Cooley Defendants conspired with the police who arrived on the scene in any way. "Merely calling police to the scene of possible violence does not create a conspiracy." *Pepper v. Village of Oak Park*, 430 F.3d 805, 811 (7th Cir. 2005) (citations omitted). She does not allege that the Cooley Defendants were even present when

---

*Affairs*, 2006 WL 3254547, *2 (N.D.Ind. Nov. 8, 2006) (In reference to an Indiana tuition exemption for children of veterans, the court stated that "[t]he Indiana courts provide an adequate remedy for persons who believe that VA officials did not properly follow state law in determining benefits eligibility. While this court may not enter declaratory or injunctive relief in cases dealing with state statutes, state courts may do so.") In any event, Marvel does not allege, nor is it reasonable to infer, that the Cooley Defendants are state actors responsible for the allocation of such tuition exemptions.

the incident occurred.  In fact, according to Marvel's complaint,
she simply left the home after she felt intimidated by the police.


Marvel also attempts to assert that the Cooley Defendants
deprived her of a liberty interest through involuntary
confinements.  In full, Marvel states that "MAM was involuntarily,
voluntarily, and coerced voluntarily, to confinement both mental
and criminal out of Elkhart County and Cooley's prosecutorial
vindictiveness or retaliation for Dec. 1986 and Aug. 1987 assaults
against MAM." (Comp. 17.)  Again the facts narrated in the
complaint do not support a conclusion that the Cooley Defendants
were responsible in any way for depriving Marvel of a liberty
interest.  "A plaintiff cannot avoid dismissal simply by attaching
bare legal conclusions to narrated facts that do not outline the
basis of his claims." *Marvel v. Indiana Department of Veterans
Affairs*, *et al.*, 2006 WL 3254547, *2 (N.D. Ind. Nov. 8, 2006)
(dismissing Plaintiff's various claims of deprivation of life and
liberty as frivolous) (*citing Thomas v. Farley,* 31 F.3d 557, 558-59
(7th Cir. 1994)).

Also, while Marvel describes various takings of personal
property such as a necklace, a bicycle, and cars, she does not
suggest, nor is it reasonable to infer, that the Cooley Defendants
participated in those takings.  She describes the various items as
being taken or stolen from her, but she does not state who took

them or that the Cooley Defendants were involved in those "takings" in any way. It is not reasonable to infer from Marvel's complaint that any of those takings resulted in a constitutional deprivation at the hands of the Cooley Defendants or that any constitutional deprivation occurred at all. These claims are frivolous.

As to her general assertions of prosecutorial vindictiveness or retaliation, Marvel does not state a claim upon which relief can be granted. In her complaint, she does not allege that she was ever prosecuted in any way. Nor does she claim that charges were ever brought against her. Rather, Marvel's claims of prosecutorial vindictiveness and retaliation appear to center around her experiences working as a law student extern in 1998. Construing Marvel's claims generously, it appears that her work on the case as an extern caused her some kind of emotional harm. Marvel states:

> MAM was participating in Externship with Leatherman on Ricky Joyner v. Sandra Hernandez case, and the other counselors were Elkhart County prosecutors Michael Cosentino among others; case was used against MAM arising prosecutorial vindictiveness in a retaliatory way against MAM to inflict intentional emotional distress **via harassment with Sandra Hernandez being the sister of Mike Hernandez one of the 1986 assailants against MAM making her think her suicide attempt caused Sandra to be murdered and Judge Duffin comment regarding MAMs private conduct in the privacy of MAM's bedroom in Lansing Michigan**. (Bold in original.)

Even giving Marvel the benefit of all inferences to which she is entitled to at this stage, these general facts do not establish the

basis for an inference leading to a viable claim of prosecutorial vindictiveness or retaliation resulting in the deprivation of any constitutional right at the hands of the Cooley Defendants.

Therefore, despite giving Marvel the benefit of all inferences to which she is entitled to at this point, these facts do not create an inference that the Cooley Defendants were in any way linked to the alleged constitutional deprivations of Marvel's property or liberty interests. While Marvel's claims purport to link the Cooley Defendants to such takings through a broad allegation of "prosecutorial vindictiveness or retaliation," as stated above, she does not allege any facts suggesting the Cooley Defendants were responsible for the application or denial of welfare benefits or entitlements, that they took or participated in the taking of her personal property, or that they participated in any prosecutorial or retaliatory action against Marvel. As such, the complaint could be properly dismissed for failure to state a claim with sufficient detail to give the Defendants clear notice of what the claim is and the grounds on which it rests; however, the Court will dismiss the case on other grounds described below as well.

Even if the Court were to construe Marvel's complaint as adequately alleging an actionable constitutional violation, Marvel cannot sue private actors under the Due Process Clause unless they have acted under color of state law. As the Cooley Defendants

correctly point out, the Fourteenth Amendment does not reach private conduct. "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal citations and quotations omitted). In general, a plaintiff may not sue a private university under Section 1983. *See Rendell-Baker v. Kohn,* 457 U.S. 830, 840 (1982) (holding that private school did not engage in state action despite receipt of public funds and high degree of state regulation); *see also Slovinec v. DePaul Univ.,* 332 F.3d 1068, 1069 (7th Cir. 2003) (stating that former student could not use Section 1983 to sue private university). Even extensive and detailed regulation of schools by the State do not turn the schools' actions into state conduct. *Rendell-Baker v. Kohn,* 457 U.S. at 840-42. In *Hu v. American Bar Ass'n*, 568 F.Supp.2d 959 (N.D.Ill. 2008), a case with striking similarities to the instant case, a former law student's Section 1983 action against private law school alleging violations of his Fourteenth Amendment rights was dismissed with prejudice by the court for failure to state a claim.

In her complaint, Marvel does not allege, nor is it reasonable to infer, that the Cooley Defendants collectively, or Timmer and Zelenski individually, are state actors or that they acted under

color of state law.  As described more fully above, her unsupported allegations of prosecutorial vindictiveness and retaliation do not serve to adequately link the Cooley Defendants to the State Defendants or any state actors for the alleged deprivations that she describes.  From the facts presented in the complaint, Marvel has not established a sufficient nexus between the Cooley Defendants and state actors or any form of state action.  The Court agrees with the Cooley Defendants that creating an inference leading to such a nexus would ignore common sense.  Marvel's claims are entirely without merit.

Additionally, it should be noted that, although the Court is unable to determine specifically what negligent acts she is referring to, Marvel scatters the phrases "negligence" and "negligence *per se*" throughout her complaint.  The Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams,* 474 U.S. 327, 332 (1986).  "Therefore, in order for the tort to implicate the Constitution, the plaintiff must prove acts which, in effect, amount to shocking or brutal conduct." *Hilton by Hilton v. Lincoln-Way High School*, 1998 WL 26174, *8 (N.D.Ill. Jan. 14, 1998) (citing *Rochin v. California,* 342 U.S. 165, 172-74 (1952); *Gumz v. Morrissette,* 772 F.2d 1395, 1400 (7th Cir. 1985), *cert. denied,* 475 U.S. 1123 (1986)).  Furthermore, a claim of "negligence *per se*" is

not the type of claim actionable under the Fourteenth Amendment. "Under traditional negligence *per se* principles, a statute or regulation defines a defendant's duty when (among other things) the statute or regulation was designed to protect against the type of harm at issue. *See generally* RESTATEMENT (SECOND) OF TORTS § 286 (1965)." *Schmitz v. Canadian Pacific Ry. Co.*, 454 F.3d 678, 681 (7th Cir. 2006). Marvel's complaint suggests no scenario which would be recognized as a viable claim of negligence or negligence *per se* under the Due Process Clause arising out of acts associated with the Cooley Defendants.[15]

Overall, the Court finds that Marvel's complaint fails to state a claim upon which relief can be granted in any capacity. "[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which a defendant is entitled." *Airborne Beepers & Video, Inc. V. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Despite a thorough examination of the facts as Marvel alleges them and an attempt to draw all reasonable inferences from those facts, the Court cannot establish any viable scenario that

---

[15] The Cooley Defendants also argue that any of their actions that could possibly be construed as viable federal claims are barred by either Indiana or Michigan Statute of Limitations. While the Court cannot fathom any actionable claims based on Marvel's complaint, the Court agrees with the Cooley Defendants that those situations Marvel describes that are even remotely rationally related to the Cooley Defendants fall well beyond the statute of limitations periods. *See Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) (A Section 1983 action is subject to the statute of limitations governing personal injury claims in the state where the alleged injury occurred. . . . A Section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action.)

would serve to raise such claim above the speculative level described in *Twombly* or that would suggest violations of any clearly established constitutional right.

Sanctions

In an attachment to her complaint, Marvel lists six prior related complaints that she has filed.[16] In addition to the six prior complaints that Marvel lists, the Court notes Marvel has filed two additional related actions in the Northern District of Indiana.[17] For various reasons, Marvel has not succeeded in her pursuit of these cases. Several of the cases have been dismissed without prejudice pursuant to Marvel's voluntary requests for dismissal. In the exhibit to her complaint, Marvel admits that, in one such case, she was ordered to pay attorney fees and costs as a condition precedent to filing a new lawsuit. She has not provided any documentation to this Court that she has paid such costs and fees. Indeed, the Cooley Defendants indicate that she has not done so, and they request dismissal of the instant complaint on those

---

[16] Marvel lists the prior related complaints as follows: MAM v. Sally McMMahn & SMWC; Vigo County 84D039907CP1244; MAM v. IU-Indy & Thomas M. Cooley; Elkhart County 20C01-0105-CP-00228; MAM v. CVS Elkhart County 20C01-0309-PL00523; MAM v. Thomas M. Cooley; Ingham County Michigan 02-1956NOC30; MAM v. Thomas M. Leatherman & Michael Cosentino; Elkhart County 20D03-602-CT00002 Superior No. 3; 20D01-0601-CT-00003 Superior No. 1.

[17] Marvel v. Elkhart County Court et al 3:08-CV-529; Marvel v. Indiana Department of Veterans Affairs et al 3:06-CV-718.

grounds as well.[18]   In response to the allegations that she has

failed to pay the aforementioned costs and fee, Marvel has "no

rebuttal to stated facts" except that "she was mentally ill and

monetarily incapable of proceeding or she would have rebutted the

Western Dist Courts Order because it barred MAM an indigent

unconstitutionally from the court by requiring MAM to pay

Defendants attorney cost and fees for any subsequent suits." (DE

#25 pp. 4-5).   In addition, the two cases Marvel has filed in the

Northern District of Indiana have been dismissed pursuant to 28

U.S.C. 1915(e)(2)(B) as frivolous and/or for failing to state a

valid claim.

Although the Cooley Defendants ask for an award of Rule 11

sanctions in their current motion, they have not followed proper

procedure for filing a Rule 11 Motion so their request is denied.[19]

The Court declines to schedule a show cause hearing regarding the

---

[18] The Cooley Defendants have provided affidavits stating that the attorney fees and costs associated with the previous lawsuits Marvel filed against them are $1,408.99 & $4,457.88.  The Cooley Defendants have also provided a copy of an order from Senior U.S. District judge Wendell A. Miles that states, in relevant part, "Should plaintiff decide to later file a third action against it, the Law School could not only reassert any affirmative defenses to plaintiff's claims, but also seek an award of costs for the previously dismissed actions pursuant to Rule 41(d).  Regarding the latter, plaintiff is hereby notified that should she file yet another action against the Law School . . . this court will order plaintiff to pay the Law School's costs incurred not only in this action but also in the Indiana action previously dismissed."  (DE #13-2 p. 38).

[19] According to Federal Rule of Civil Procedure 11(c)(2), "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."

applicability of Rule 11(b) sanctions on its own initiative at this point.  In regard to Rule 11 sanctions, the Seventh Circuit has stated:

> [T]he purpose of Rules 11 . . . is to induce litigants to conform their *behavior* to the governing rules regardless of their subjective beliefs.  Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants.  Once the legal system has resolved a claim, judges and lawyers must move on to other things.  They cannot endlessly rehear stale arguments. . . . [T]here is no constitutional right to bring frivolous suits, see *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983).

*Coleman v. C.I.R.*, 791 F.2d 68, 72 (7th Cir. 1986).  Marvel's current complaint is only marginally coherent, and the emergency injunctions she has filed in this cause demanding such things as lap-band surgery, "joinder" to a previously dismissed lawsuit, a tape recorder, ROTC classes, and a strange request to "fix my heart" are less than coherent.  Marvel has not presented factual contentions with any evidentiary support or any likelihood of evidentiary support.  See FED.R.CIV.P. Rule 11(b)(3).

However, that said, this Court has construed her claims as generously as possible and has addressed all of her potential arguments in the hope that this Order will stop Marvel's seemingly endless parade of lawsuits based on the same alleged injuries.  Marvel is cautioned that repeatedly filing future warantless lawsuits related to these circumstances will not be tolerated by

the federal courts and may be punished appropriately, including the possibility of restricting Marvel's access to the courts.

CONCLUSION

For the above stated reasons, the Cooley Defendants' Motion (DE #12) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against remaining Defendants Thomas M. Cooley, Dean Amy Timmer, and Dean Paul Zelenski. The Clerk is **FURTHER ORDERED** to close this case.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the Plaintiff offers bona fide arguments supporting her appeal.

**DATED:  January 28, 2009**           /s/**RUDY LOZANO, Judge**
                                        **United States District Court**